## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Leslie Jay Richards

    v.

Julie D. Jones

In re Custody of Chrystle D. Richards

August 15, 1988

Case No. L-88-192

By JUDGE WILLIAM H. LEDBETTER, JR.

The issue for determination is whether this court has jurisdiction to hear and decide this child custody case.

The subject of this litigation is the nine-year-old daughter of Leslie Jay Richards, a resident of Washington, and Julie Dawn (Richards) Jones, a resident of Spotsylvania County, Virginia.

At the time of their separation, Richards and Jones were residents of Washington. Their marriage was dissolved in Benton County, Washington, on March 3, 1981. Custody of Chrystle was awarded to Richards, with reasonable visitation rights to Jones. Jones, who had left Washington, did not participate in those proceedings.

Chrystle continued to live with her father in Washington until the spring of 1987, when they moved to California along with the father's new wife and her two children by a previous marriage.

In California, a child abuse investigation resulted in the removal of Chrystle from Richard's home and her placement in foster care. (Although the circumstances are sketchy, the investigation apparently was instigated by Richards' mother.)

Hearing of this, Jones retained counsel in Washington and on May 1, 1987, obtained an order of temporary custody. The order was to be effective "until a final determination as to custody and the modification of this decree can be made; subject to order of the California courts." By the terms of that order, a further hearing was scheduled for June 11, 1987.

A few days later, the California court dismissed a petition pending there and released Chrystle to the custody of Jones. The order provided: "Court dismisses petition; case to be handled in the State of Washington through Family Court."

Armed with the Washington order, Jones received custody of Chrystle from California authorities. She brought her to Spotsylvania County where the child has lived ever since.

At some time during May or June, Richards returned to Washington (where he now resides) and retained counsel to pursue the custody matter. No hearing was held on June 11, 1987. On July 9, 1987, a court commissioner of the Superior court of Benton County, Washington, heard Richards' request that Chrystle be returned to him and entered an order returning custody of Chrystle to Richards. Jones did not participate in that proceeding.

On October 30, 1987, the child abuse allegations against Richards were dismissed.

On February 24, 1988, Jones filed a petition for custody in the Spotsylvania County Juvenile and Domestic Relations District court. On March 1, 1988, Richards filed a petition in that court requesting recognition and enforcement of the Washington custody order of July 9, 1987, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA). On April 22, 1988, that court denied Richards' petition, heard the case on its merits, and awarded custody to Jones.

Richards appealed to this court and, by statute, is entitled to a *de novo* determination of the jurisdictional issue and, if appropriate, the merits of the case.

This court heard evidence and arguments on June 6, 1988. Thereafter, in order to more carefully evaluate the circumstances of the July 9, 1987, proceeding in Washington, the court obtained information from the clerk's office of that court pursuant to Virginia Code § 20-130(D). Counsel were notified and given the opportunity to supplement their arguments in light of this new information (copies of which are in the court file). A second hearing was conducted on August 1, 1988, and the matter was taken under advisement.

## Jurisdiction

Richards argues that Article IV, § 1, of the United States Constitution requires that the courts of this Commonwealth give full faith and credit to the July 9, 1987, Washington order.

Applying well-established principles of the full faith and credit doctrine, it is axiomatic that the courts of one state are obligated to give orders of another state only such dignity or finality as such orders would receive in the state of origin. Court orders determining custody are never "final." They are always subject to modification due to changed circumstances. Accordingly, the federal full faith and credit clause does not constitute a complete bar to another state's exercise of jurisdiction in interstate custody disputes, even when the prior out-of-state order satisfied due process requirements that are a prerequisite of validity.

Largely because the full faith and credit clause does not resolve this problem, the UCCJA was drafted and has been adopted in most states, including Virginia and Washington. The purpose of the Act is to avoid unnecessary jurisdictional competition and conflicts, and to assure that litigation over the custody of a child takes place in the state most closely connected with the child and the evidence relevant to the child's welfare. Under the Act, jurisdiction is governed by Virginia Code § 20-126.

Based on the record and the testimony presented, this court finds that it has jurisdiction to make a custody determination pursuant to the provisions of § 20-126. Virginia is the "home state" of the child, as that term is defined in § 20-125(5). The child is physically present

in Virginia. There is substantial evidence concerning the child's care, protection, training, and personal relationships, available here.

## Inconvenient Forum

Next, Richard argues that the court should decline to exercise jurisdiction on the ground that Virginia is an inconvenient forum and that Washington is a more appropriate forum. Considering all the factors in § 20-130, the court is of the opinion that it should exercise jurisdiction.

This case is unlike *Middleton v. Middleton*, 227 Va. 82 (1984), where the father, a resident of Virginia, refused to return the children after a visitation and sought a custody determination in Virginia. In *Middleton*, the Court held that the trial court abused its discretion in exercising jurisdiction under § 20-130 because Virginia was not the "home state," the children had only minimal and "sporadic" contacts with Virginia, and all evidence regarding the welfare of the children was available in the foreign jurisdiction. The facts of this case are readily distinguishable and provide the court with a proper basis for exercising jurisdiction.

## Misconduct

Richards asserts that the court should decline to exercise jurisdiction because Jones has engaged in "reprehensible conduct" by removing or improperly retaining Chrystle. This assertion is not supported by the evidence.

Jones removed Chrystle from foster care in California by resorting to legal processes in California and Washington. She did not initiate the child abuse investigation; she had nothing to do with Chrystle's removal from Richards' home and placement in foster care. She consulted with California authorities, obtained a Washington court order, and brought the child to Virginia. There is no suggestion that Jones engaged in any sort of chicanery or misdeed, or that she had anything other than the purest of motives in taking the action that resulted in Chrystle's residency here.

In *Middleton*, the Court addressed the "child snatching" aspect of a multi-jurisdictional custody case and noted that one of the objectives of the UCCJA is to prevent such unsettling tactics. This court could not be more in accord with such sentiment. However, this is not such a case, Jones engaged in no misconduct in obtaining physical custody of the child.

Richards argues that Jones "retained the child" in violation of the July 9, 1987, Washington court order. The essence of that argument is addressed below.

### Recognition of Out-of-State Decree

The gravamen of Richards' claim is that this court must recognize and enforce the Washington order of July 9, 1987, under the mandate of § 20-136. That statute provides that Virginia courts "shall recognize and enforce" out-of-state custody orders which were made under appropriate "jurisdictional standards." For the reasons explained below, it is the opinion of this court that the Washington order of July 9, 1987, does not create a bar to further consideration of the issue of custody in the Virginia courts.

After the May 1, 1987, Washington order granted temporary custody to her, Jones had no further contact with the State of Washington. She returned, with Chrystle, to Virginia. On May 21, 1987, her Washington attorney withdrew. His withdrawal was filed with the court and served on both Jones and Richards. (Although the method of withdrawal is not consistent with Virginia practice, it appears to have satisfied the Washington court, since, at a proceeding on June 11, 1987, the court acknowledged that Jones's counsel had withdrawn from the case.)

As noted above, the May 1, 1987, order by which Jones obtained custody of Chrystle contained a provision for further hearing on June 11, 1987. On June 11, 1987, Richards and his attorney appeared in the Washington court. Jones did not appear. Her attorney appeared for the purpose of confirming that he had withdrawn. The court took the matter under advisement.

On June 30, 1987, Richards filed a motion for return of the child and asked the Washington court to vacate the May 1, 1987, order. A notice of hearing for July 9,

1987, was filed. An affidavit filed by Richards' attorney states that copies of the motion and notice were mailed on June 29, 1987, to Jones at her Virginia address and to her former Washington attorney. (Obviously, the mailing to the attorney was meaningless, since he had withdrawn, the court had noted his withdrawal on June 11, 1987, and Richards' attorney knew of the withdrawal.)

The hearing was held nine days after the motion was filed and ten days after notice was mailed to Jones in Virginia. As a result of that hearing, which Jones did not attend in person or by counsel, the May 1, 1987, order was vacated and Jones was directed to return Chrystle to Richards.

It is clear from the evidence, including the certified contents of the Washington court file, that Jones did not have prior knowledge or notice of the July 9, 1987, hearing. In a letter filed with the Washington court on July 7, 1987, two days prior to the hearing, Jones requested "that I be notified of any further proceeding in my case and be allowed proper time to make travel arrangements as needed." After attempting to plead her case, she closed her letter with the repeated request that she be notified of "any proceedings so we may attend them even if we can't afford an attorney at this time." This was not a plea of one who already knows that a hearing date has been set. The court's records indicate that Jones was not present and was not represented by counsel. Jones testified at the hearing in this court on June 6, 1988, that she knew nothing of the July 9, 1987, hearing in Washington and received no advance notice of it. The envelope containing the notice sent by Richards' attorney to Jones, posted by certified mail on June 29, 1987, is in evidence in this proceeding. It indicates that the item was "refused" and "unclaimed" but the date of its receipt in the Spotsylvania post office is obliterated. Inexplicably, two separate postal service claim slips are pasted to the envelope, one indicating that first notice was given on July 2, 1987, and the second, superimposed upon the first, indicating that first notice to the addressee, Jones, was given on July 10, 1987, a day *after* the hearing was conducted.

Virginia Code § 20-136 requires recognition of out-of-state custody orders which have been made "under factual circumstances meeting the jurisdictional standards of

the chapter . . . ." Under § 20-128, out-of-state residents are to receive notice of custody proceedings "in a manner reasonably calculated to give actual notice," including certified or registered mail "at least twenty-one days before any hearing." If service is by mail, proof of service must include "a receipt signed by the addressee."

The record establishes that Jones had no prior notice of the July 9, 1987, hearing. It further establishes that Jones was not served with process in accordance with the UCCJA or in accordance with jurisdictional standards "substantially similar" to those required by the Virginia statutes. The notice was mailed cross-country on June 29, 1987. Although it is unclear when the notice arrived in the Spotsylvania post office, it is obvious that Jones did not claim the item. Ignoring the fact that she failed or refused to claim the envelope containing the notice, and ignoring the fact that proof of service did not include "a receipt signed by the adressee," and ignoring further the discrepancy in the postal service claim slips about the date of "first notice," the simple fact remains that Jones could not have received the notice, even if she had chosen to claim it, until less than a week prior to the hearing. Finally, Jones's letter to the Washington court, received there and filed two days before the hearing, clearly shows that she knew nothing of the pending hearing and that she wished the opportunity to be heard.

Virginia code § 20-128(D) provides that no notice is required "if a person submits to the jurisdiction of the court." If it is Richards' position that Jones was entitled to *no* notice of the July 9, 1987, hearing because of this provision, the argument is without merit. Obviously, no one in Washington took that position in the summer of 1987. In any event, even where a party has made an earlier appearance, due process requires that such party be given proper notice of subsequent proceedings in the case, especially those that are dispositive of the subject matter in controversy. The provisions of the UCCJA must be construed in the light.

For the reasons stated, this court will exercise jurisdiction to hear this custody case.